| | |
|---|---|
| 1  Dylan P. Todd, NV Bar No. 10456<br>   dtodd@fgppr.com<br>2  Lee H. Gorlin, NV Bar No. 13879<br>   lgorlin@fgppr.com<br>3  FORAN GLENNON PALANDECH<br>   PONZI & RUDLOFF PC<br>4  2200 Paseo Verde Parkway, Suite 280<br>   Henderson, NV 89052<br>5  Telephone: 702-827-1510<br>   Facsimile:  312-863-5099 |  |

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA, NEVADA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>OBTEEN N. NASSIRI, and individual; and MED ED LABS, a domestic nonprofit corporation, as the alter ego of OBTEEN N. NASSIRI.<br><br>Defendant. | CASE NO.:  2:20-cv-00425<br><br>RELATED CASE NO. 2:08-cv-00369-JCM-GWF<br><br><br>**COMPLAINT** |

Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, and Allstate Fire & Casualty Insurance Company (collectively "Plaintiffs" or "Allstate") hereby submit this Complaint against Defendants Obteen N. Nassiri and Med Ed Labs, as the alter-ego of Obteen N. Nassiri and allege as follows:

### INTRODUCTION

1. This is an action for declaratory judgment arising from the enforcement of the judgment against Obteen N. Nassiri ("Nassiri") in case no. 2:08-cv-00369-JCM-GWF.

2. The underlying lawsuit arose from Fraud and Intentional Misrepresentation, Conspiracy to Defraud, State and Federal RICO Violations, on the part of Nassiri, and other defendants perpetuated against Allstate.

3. Nassiri was found liable via Jury Verdict for the aforementioned causes of action, as well as punitive damages.

4. Following that judgment, Nassiri set up various medical companies from which to conduct business and earn income. Each of the companies Nassiri set up was instituted through a straw man so that Nassiri's name was not listed on official paperwork. However, Nassiri was the sole controlling person for each of these companies, handled all business, performed all marketing and controlled all finances. Nassiri referred to himself as "the business" for each of these entities on various occasions.

5. Despite not being publicly listed as an officer, Nassiri is the sole operator of Med Ed Labs, and has been using Med Ed Labs to conceal his assets from Allstate's collection efforts. Nassiri used Joshua Johnston, the only publicly listed officer, as a straw man to conceal his involvement with Med Ed Labs. Yet, Nassiri is Med Ed Labs and Med Ed Labs is Obteen Nassiri.

6. Med Ed Labs' listing on GovTribe.com, a website for seeking federal grant opportunities, lists Obteen Nassiri as the only contact.

7. Plaintiffs seek a declaration that Med Ed Labs is the alter ego and/or reverse alter ego of Obteen N. Nassiri and that Med Ed Labs is liable to Plaintiffs for the entirety of the judgment against Nassiri entered in case no. 2:08-cv-00369-JCM-GWF.

### THE PARTIES, JURISDICTION AND VENUE

8. Plaintiff, Allstate Insurance Company, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

9. Plaintiff, Allstate Property & Casualty Insurance Company, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

10. Plaintiff, Allstate Indemnity Company, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

11. Plaintiff, Allstate Fire & Casualty Insurance Company, is a corporation incorporated under the laws of the state of Illinois, with its principal place of business in Illinois.

12. Defendant Med Ed Labs is a domestic nonprofit corporation under the laws of the state of Nevada, with its principal place of business in Nevada. Despite public filings to the contrary, upon information and belief, this company is owned and solely operated by Obteen Nassiri. Med Ed Labs is the Alter-Ego of Obteen Nassiri.

13. Defendant Obteen Nassiri ("Nassiri") is a competent adult, a resident and citizen of Nevada.

14. Pursuant to 28 U.S.C. § 2201(a), this Court may issue a declaratory judgment.

15. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Plaintiffs' Civil Conspiracy claim as it is related to Plaintiffs' declaratory relief claim.

16. Alternatively, there is complete diversity among the parties, and the amount in controversy, $8,699,298.78, exclusive of interest and costs, exceeds $75,000. Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

17. All defendants reside in the State of Nevada, in the District of Nevada. For this reason, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1). Further a substantial part of the events or omissions giving rise to this claim occurred in this District, therefore venue is also proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

## FACTUAL ALLEGATIONS

18. On March 20, 2008, Allstate filed case no. 2:08-CV-00369 in the United States District Court, District of Nevada, against Nassiri, and others, for among other claims violations of the Racketeering Influenced and Corrupt Organizations Act (18 USC § 1962), Nevada State RICO violations (NRS 207.400), fraud, conspiracy to defraud, unjust enrichment/constructive trust, and declaratory relief.

19. After a trial on the merits and based upon jury verdict finding for Plaintiffs, a judgment was entered in favor of Plaintiffs and against Defendants in case no. 2:08-CV-00369 with attorney's fees and costs in the total amount of $8,699,298.78.

20. As of March 7, 2014, Nassiri claimed that he had no occupation and had not received income from any source in the past year. Nassiri further claimed that neither he nor his wife worked or received any income to support themselves or their five minor children. Instead, Nassiri claimed that his wife's grandparents paid all of the Nassiri's expenses, while living in the Nassiri's home.

21. However, Allstate discovered that Nassiri had been secretly operating medical companies he set up through straw men for the purposes of concealing assets from Allstate to avoid paying the fraud/RICO judgment.

22. On July 28, 2015, Allstate filed case no. 2:15-CV-01434 in the United States District Court, District of Nevada, against Nassiri, and others, for violations of the Nevada Uniform Fraudulent Transfers Act (Nev. Rev. Stat. §§ 112.140, et. seq.) ("UFTA Action").

23. The allegations in case no. 2:15-CV-01434 stemmed from Nassiri's use of Advanced Med LLC as a conduit to conceal money/revenue from his creditors and Green Tree Services, LLC as the successor entity to the business interests of Advanced Med LLC.

24. The parties in case no. 2:15-CV-01434 reached a settlement and the case was dismissed on April 18, 2018. However, during the litigation and after Advanced Med LLC was discovered, Nassiri shifted assets and business over to a new company Med Ed Labs, Inc.

25. Upon information and belief, Nassiri started Med Ed Labs to continue his work in the medical community following the revocation of his Nevada chiropractic license.

26. Upon information and belief, Nassiri uses Med Ed Labs' finances to conceal his own assets and income which would be collectable pursuant to the Judgment entered in case no. 2:08-CV-00369.

27. On August 12, 2015, (During the time of the UFTA action) Med Ed Labs filed formation documents with the Nevada Secretary of State. Although Med Ed Labs lists Joshua Johnston as its officers, the listed address of 7345 S. Durango Boulevard #B--107 Las Vegas, NV 89126, has been tied to various other businesses owned and/or operated and/or affiliated with Obteen Nassiri.

28. Joshua Johnston was also the publicly identified managing member of other Nassiri front organization, Green Tree Services, LLC.

29. Green Tree Services operated under the d/b/a name of Med Ed Labs before Med Ed Labs became its own non-profit corporation.

30. Upon information and belief, Med Ed Labs has intentionally named Mr. Johnston in order to conceal its relationship to Obteen Nassiri.

31. Upon information and belief, Med Ed Labs' sole publicly identified officer Joshua Johnston, has no background, education, training or experienced in any way related to the medical field in general or any of the work/services performed or invoiced by Med Ed Labs. Johnston performs no work for the company and has no actual responsibility.

32. Prior to becoming the managing member of Nassiri's prior front organization, Green Tree Services, LLC, Joshua Johnston was employed by Obteen Nassiri's father-in-law, Jim Anderson through Anderson's company RSI Builders. Upon information and belief, Johnston continues to work in the construction/building industry and does no actual work for Med Ed Labs.

33. Despite claiming that he has no income or assets, Obteen Nassiri continues to enjoy the same standard of living and lifestyle that he maintained prior to the judgment against him for RICO violations in 2:08-CV-00369.

34. Upon information and belief, the prior Nassiri front organization, Green Tree Services, LLC began operating under the fictitious firm name Med Ed Labs on or about February 2015.

35. On August 12, 2015, Green Tree Services, LLC through its managing member Joshua Johnston, filed incorporation documents with the Nevada Secretary of State to make Med Ed Labs a non-profit corporation. Joshua Johnston is publicly listed as the President, Secretary, Treasurer and Director of Med Ed Labs on the Nevada Secretary of State's entity search.

36. Med Ed Labs' listing on GovTribe.com, a website for seeking federal grant opportunities, lists Obteen Nassiri as the only contact.

37. The Nevada entity search results for Med Ed Labs also identify Joshua Johnston's address, as well as Med Ed Labs' place of business, as 7345 S. Durango Boulevard# 107 Las Vegas, NV 89126. This is the same Nassiri-affiliated address that Green Tree Services, LLC attempted to conceal in amended Secretary of State filings.

38. Green Tree Services, LLC closed it fictitious name filing for Med Ed Labs in August 2015.

39. Despite his publicly identified affiliation as the sole officer of Med Ed Labs, Joshua Johnston identifies himself on social media and business networking websites as a construction project manager with no medical experience or affiliation whatsoever.

40. Upon information and belief, Med Ed Labs (the nonprofit Corporation) is the successor of other Nassiri front organizations, Advanced Med, Green Tree Services, LLC d/b/a Advanced Med, Green Tree Services, LLC d/b/a West Coast Medical Training Centers and Green Tree Services, LLC d/b/a Med Ed Labs.

41. Nassiri is the sole person who sends out invoices to customers on behalf of Med Ed Labs.

42. Upon information and belief Nassiri has the sole authority to make deposits into Med Ed Labs' bank account(s) with Chase Bank and/or other financial institutions.

43. Upon information and belief, Nassiri has sole authority and discretion to make withdrawals and/or payments from Med Ed Labs' bank account(s) with Chase Bank and/or other financial institutions.

44. Nassiri has unrestricted access to Med Ed Labs' bank account(s) with Chase Bank and/or other financial institutions.

45. Upon information and belief, Nassiri has sole authority over Med Ed Labs' credit card(s).

46. Upon information and belief, Nassiri has sole discretion over all of Med Ed Labs' finances, despite the use of a Joshua Johnston as a straw man for public disclosures.

47. In Nassiri's prior schemes, he set up other front companies to hide assets.
   a. One such company, Advanced Med, LLC, Nassiri used Faa Foi Tuitama as the straw man.
   b. Tuitama had no prior experience in any medical field and was not involved in the day to day of Advanced Med, LLC.

      c.    Advanced Med, LLC had a credit card in Tuitama's name, however, Tuitama was not the one using the credit card. Upon information and belief, Nassiri was the only person to use Tuitama's Advanced Med credit card.

      d.    Tuitama and Nassiri opened a bank account at the Chase Bank near Nassiri's address for Advanced Med, LLC in Tuitama's name. Upon information and belief, Nassiri was the only person to use the funds in that account.

      e.    Tuitama agreed to be Nassiri's straw man for Advanced Med, LLC with no experience in the medical field as Nassiri told him that, "it would be good for his family."

      f.    Despite having Advanced Med's credit card and bank account in Tuitama's name, Tuitama did not get to see Advanced Med's internal financial documents or tax returns.

      g.    Tuitama never checked the Chase Bank account, nor was he expected to check on it, as the only thing Nassiri needed was Tuitama's name.

      h.    Occasionally, Nassiri would bring documents to Tuitama's house and ask Tuitama to sign them.

      i.    Nassiri would pay Tuitama $200 occasionally to serve in this role as straw man.

48. Upon information and belief, Nassiri is using Joshua Johnston in the same manner with respect to Med Ed Labs.

## COUNT ONE – DECLARATORY JUDGMENT – REVERSE ALTER EGO

49. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 46 above, as if each were more fully set forth here.

50. Nassiri generated and obtained profits, proceeds, income, and other personal property through his continued work in the medical field under Med Ed Labs, and continues to do so to this day.

51. Nassiri transferred these profits, proceeds, income and other personal property to Med Ed Labs.

52. Nassiri remains in control of the equipment and other personal property of Med Ed Labs.

53. Nassiri uses Med Ed Labs as a front organization with the actual intent to continue to hinder, delay, and/or defraud Allstate in its efforts to enforce its Judgment against Nassiri entered in case no. 2:08-CV-00369.

54. Med Ed Labs is solely influenced and governed by Nassiri.

55. Nassiri and Med Ed Labs share a unity of interest and interest such Med Ed Labs and Nassiri are inseparable from one another. Nassiri refers to himself as Med Ed Labs and Med Ed Labs as Obteen Nassiri.

56. Based on Nassiri's history of using front organizations in a similar matter, as well as his current use of Med Ed Labs, adherence to the corporate fiction of a separate entity under these circumstances would sanction continued fraud and promote injustice.

57. Nassiri's and Med Ed Labs' funds are comingled to the point that Nassiri uses Med Ed Labs' credit cards and debit cards to pay for personal expenses such as trips to the movies and theme parks. In other words, Nassiri treats Med Ed Labs' funds as his own. Nassiri answers to no one but himself for Med Ed Labs.

58. Continuing to recognize Med Ed Labs' separate corporate existence, would bring about an inequitable result.

59. Obteen Nassiri remains in control of the transferred revenue and other capital and income generated through the entity Med Ed Labs.

60. In short, Obteen N. Nassiri, D.C. and Med Ed Labs are one in the same, and the alter ego of each other.

61. Med Ed Labs, as Nassiri's alter ego is liable to Allstate for Nassiri's debt pursuant to the Judgment entered against Nassiri in case no. 2:08-cv-00369.

## COUNT TWO – CIVIL CONSPIRACY

62. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 59 above, as if each were more fully set forth here.

63. Nassiri and Med Ed Labs as Nassiri's alter-ego conspired with Joshua Johnston to use Johnston's name in order to unlawfully conceal Nassiri's assets and/or income in an attempt to hide the same from Plaintiffs' investigative efforts.

64. Nassiri/Med Ed Labs conspired with Johnston to set up Med Ed Labs and transfer assets and the strawman scheme from Green Tree Services and Advanced Med once Allstate discovered their existence.

65. Johnston and Nassiri knew that omitting Nassiri's name from any formation and/or filing documents for Med Ed Lab would allow Nassiri to present to Allstate that he did not have any means of income, employment or revue that might be used to satisfy fraud/RICO judgment against him.

66. Plaintiffs have been harmed by this conspiracy in that they have been forced to expend additional time and resources into discovering the true whereabouts of Nassiri's assets and/or income to satisfy Nassiri's debt to Plaintiffs pursuant to the Judgment entered against Nassiri in case no. 2:08-cv-00369.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendant Med Ed Labs as the alter ego of Obteen N. Nassiri, D.C. and an Order declaring the following:

A. Med Ed Labs is the alter ego of Obteen N. Nassiri.

B. Med Ed Labs is liable to Plaintiffs for the entirety of the judgment against Obteen N. Nassiri issued in case no. 2:08-cv-00369-JCM-GWF, including all accrued interest;

C. Obteen N. Nassiri and Med Ed Labs are liable for consequential damages, attorney's fees and punitive damages due to his unlawful conspiracies to defraud Plaintiffs; and

///
///
///
///
///

D.  Plaintiffs are entitled to such other relief as the Court deems just and proper.

Dated this 28th day of February 2020.

FORAN GLENNON PALANDECH
PONZI & RUDLOFF PC

By: */s/ Dylan Todd*
Dylan P. Todd (NV Bar No. 10456)
Lee H. Gorlin (NV Bar No. 13879)
2200 Paseo Verde Parkway, Suite 280
Henderson, NV 89052

*Attorneys for Plaintiffs*
