1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ALLSTATE INSURANCE COMPANY, et al.,

                    Plaintiff(s),

        v.

OBTEEN N. NASSIRI, et al.,

                    Defendant(s).

Case No. 2:20-CV-425 JCM (DJA)

ORDER

Presently before the court is plaintiffs Allstate Insurance Co., Allstate Property & Casualty Ins. Co., Allstate Indemnity Co., and Allstate Fire & Casualty Ins. Co. (collectively, "Allstate")'s motion for summary judgment.  (ECF No. 108).  Defendants Obteen Nassiri and Med Ed Labs (collectively, "defendants") filed a response (ECF No. 116), to which Allstate replied (ECF No 118).

Also before the court is defendants' motion for summary judgment. (ECF No. 112). Allstate filed a response (ECF No. 117), to which defendants replied.  (ECF No. 120).

Also before the court is defendants' motion to extend the deadline to file their motion for summary judgment (ECF No. 109) and the accompanying supplement to that motion (ECF No. 110).  Allstate filed a response (ECF No. 111), to which defendants replied (ECF No. 114), filed a supplement to that reply (ECF No. 115), and submitted documents to chambers for *in camera* review.

I.        **Background**

This action arises out of Allstate's attempt to collect on a judgment this court rendered against Nassiri in 2013.  The courts finds that the following material facts are undisputed. Nassiri and Joshua Johnston are brothers-in-law.  (ECF No. 108-3 at 31).  In 2013, Johnston

**James C. Mahan**
**U.S. District Judge**

1   purchased a medical liens company, and Nassiri later approached him with an idea to open a

2   medical training company as part of that original lien company.  (ECF No. 108-1 at 31–32).

3   Two years later, in 2015, Johnston filed a fictitious name registration with the Nevada Secretary

4   of State designating Med Ed Labs as a "doing business as" entity for the original medical liens

5   company.  (ECF Nos. 108-14; 108-16).

6        The two men developed a business plan for Med Ed Labs together, but the secretary of

7   state filings initially listed Johnston as holding all officer positions in the company.  (ECF Nos.

8   108-1 at 35–36; 108-3 at 39; 108-15).  Nassiri later became the secretary in 2020.  (ECF No.

9   108-17)

10        Nassiri was hired to manage the "day-to-day operations" of the business, including

11  scheduling, planning the educational and training programs, and communicating with clients.

12  *See, e.g.*, (ECF No. 108-1 at 46).  Initially, Med Ed Labs listed Nassiri's home address as its

13  business address, and listed Nassiri's personal cell phone number as its business number.  (*Id.* at

14  49; ECF No. 108-3 at 44, 92–93)

15        Johnston and Nassiri spoke weekly regarding the business.  (ECF Nos. 108-1 at 103).

16  Johnston, as at least the nominal owner of the business, retained some level of ultimate decision-

17  making authority in that he reviewed financial statements and served as the authority on certain

18  "major decisions."  (ECF Nos. 108-1 at 46–47, 75–76; 108-3 at 46, 61–62)

19        This business relationship is relevant due to Nassiri's history in this court.  In 2013 and

20  2014, this court entered two final judgments against Nassiri and in favor of Allstate on a set of

21  racketeering claims totaling approximately $8.5 million inclusive of attorney fees, pre-judgment

22  interest, and costs.  (ECF Nos. 108-7; 108-8).  To date, that judgment remains unpaid.  Allstate

23  now seeks a declaration that Med Ed Labs is Nassiri's alter ego, and is thus liable for the

24  judgments rendered in the underlying racketeering action.  (ECF No. 53).

25        Allstate filed the instant suit on February 28, 2020 (ECF No. 1) and amended its

26  complaint on May 26, 2020 (ECF No. 53).  It brings a declaratory judgment claim seeking a

27  finding that Nassiri and Med Ed Labs are alter egos, as well as a civil conspiracy claims alleging

28  that Nassiri and Johnston conspired to shield Nassiri's assets by hiding them in Med Ed Labs.

James C. Mahan
U.S. District Judge

- 2 -

1    (*Id.*).  Following several discovery extensions, the parties now present competing motions for

2    summary judgment.  (ECF Nos. 108, 112).

3    **II.**    **Legal Standard**

4         The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

5 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

6 any, show that "there is no genuine dispute as to any material fact and the movant is entitled to

7 judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment

8 is "to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477

9 U.S. 317, 323–24 (1986).

10         For purposes of summary judgment, disputed factual issues should be construed in favor

11 of the non-moving party.  *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990).  However, to

12 be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts

13 showing that there is a genuine issue for trial."  *Id.*

14         In determining summary judgment, the court applies a burden-shifting analysis.  "When

15 the party moving for summary judgment would bear the burden of proof at trial, it must come

16 forward with evidence which would entitle it to a directed verdict if the evidence went

17 uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480

18 (9th Cir. 2000).  Moreover, "[i]n such a case, the moving party has the initial burden of

19 establishing the absence of a genuine issue of fact on each issue material to its case."  *Id.*

20         By contrast, when the non-moving party bears the burden of proving the claim or

21 defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

22 an essential element of the non-moving party's case; or (2) by demonstrating that the non-

23 moving party failed to make a showing sufficient to establish an element essential to that party's

24 case on which that party will bear the burden of proof at trial.  *See Celotex Corp*., 477 U.S. at

25 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied

26 and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress &*

27 *Co.*, 398 U.S. 144, 159–60 (1970).

28

**James C. Mahan**
**U.S. District Judge**

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**III.  Discussion**

As an initial matter, defendants' motion to extend time (ECF 109) is DENIED. Therefore, the supplement to that motion (ECF No. 110), the underlying motion for summary

James C. Mahan
U.S. District Judge

- 4 -

1    judgment (ECF No. 112), and the responsive pleadings to that motion (ECF Nos. 117; 120) shall

2    be STRICKEN from the record.

3           By way of procedural history, discovery and dispositive motion deadlines have been

4    extended eight times in this case, a total delay of seventeen months.  *See, e.g.*, (ECF No. 106).

5    Discovery in this matter closed on August 23, 2022, and dispositive motions were due on

6    September 27, 2022, pursuant to the last granted extension.  (*Id.*)  The day before that deadline,

7    defense counsel conferred with opposing counsel to seek yet another extension—seven days to

8    October 4, 2022.  (ECF No. 111-6).  Allstate's counsel agreed to a three-day extension, but this

9    apparently was not satisfactory to defense counsel, who filed the instant motion with the court

10   requesting a full seven days.  *See* (*id.*; ECF No. 109).

11          While the court may have been amenable to that request, it is now moot.  Defense

12   counsel missed that deadline as well.  He purported to file a supplement on October 4, 2022, at

13   just after 9:00pm—hours before the deadline—requesting an additional two days to complete the

14   motion.  (ECF No. 110).  However, supplementation is improper in this district without prior

15   leave of court.  *See* LR 7-2(g).

16          While the court may have been persuaded to grant an extension, defense counsel has not

17   presented the court with the appropriate procedural vehicle to do so.  Counsel (1) requested a

18   seven-day extension, (2) saw that he was going to miss the deadline again, and (3) unilaterally

19   filed a supplement with the court that essentially sought to amend his original motion to instead

20   request nine days.

21          The court has reviewed defense counsel's *in camera* submission filed in reply, and while

22   the court empathizes with his personal and family struggles, those struggles do not change the

23   fact that counsel's filing strategy was functionally a mechanism by which he sought to set his

24   own deadlines.  Allstate's counsel was subject to the same deadlines but was nevertheless able to

25   file a timely motion for summary judgment.  *See* (ECF No. 108, filed on September 27, 2022).

26   Indeed, granting defense counsel's unilateral extension request could prejudice Allstate since

27   Allstate's motion had already been filed and was available for defense counsel to reference

28   throughout the requested extension period.

**James C. Mahan**
**U.S. District Judge**

- 5 -

The court understands that defense counsel is a solo practitioner (as opposed to Allstate's counsel practicing at a firm), but the court will not countenance a failure to heed deadlines or procedural formalities solely because defense counsel has made the decision to practice on his own.  Counsel could have presented his supplement as an exhibit in a "motion to supplement" his prior filing.  He did not, and the court will not consider a document that was filed in violation of local rules.  Thus, the only request the court has before it is the ninth request to extend the deadline for seven days to October 4, 2022, and that request is rendered moot by the late filing of the motion for summary judgment on October 6, 2022.  It is therefore DENIED.

In light of that, the court is left with Allstate's motion for summary judgment.  Granting that motion requires two findings: (1) Med Ed Labs is the alter ego of Obteen Nassiri, and (2) there was a civil conspiracy between Nassiri and Joshua Johnston to hide Nassiri's assets using Med Ed Labs. As discussed below, there are genuine issues of material fact as to both of those conclusions, and Allstate's motion for summary judgment is DENIED.

A.  <u>Alter Ego</u>

Corporations are not liable for the acts of its subsidiaries, except in rare cases.  *Lorenz v. Beltio Ltd.*, 963 P.2d 488, 496 (Nev. 1998).  However, this general principle does not shield a corporation from liability when it is nothing more than an alter ego of its principal.  *Id.*  Nevada law governs this court's alter-ego analysis.  *See Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993) (citing *Wolfe v. United States,* 806 F.2d 1410, 1411 n.3 (9th Cir.1986), *cert. denied,* 482 U.S. 927 (1987)) ("[The court] appl[ies] the law of the forum state in determining whether a corporation is an alter ego of the taxpayer.").  Under Nevada law, "the 'essence' of the alter ego doctrine is to 'do justice' whenever it appears that the protections provided by the corporate form are being abused."  *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 845–46 (Nev. 2000) (citing *Polaris Industrial Corp. v. Kaplan*, 747 P.2d 884, 888 (Nev. 1987)).  The court considers three "general requirements" when deciding whether to apply the alter ego doctrine:

> (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the

James C. Mahan
U.S. District Judge

- 6 -

corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice.

*Polaris Indus. Corp.*, 747 P.2d at 886 (citing *McCleary Cattle Co. v. Sewell,* 317 P.2d 957, 959 (Nev. 1957)); *see also* Nev. Rev. Stat. § 78.747.

A finding of "alter ego" is typically used to pursue an individual to satisfy the debts of a corporation, but the doctrine of "reverse alter ego"—wherein a corporation is pursued to satisfy the debts of an individual—is well established under Nevada law. *See Loomis*, 8 P.3d at 846. The Nevada Supreme Court has cautioned that "the corporate cloak is not lightly thrown aside," however. *Id*. (citing *Baer v. Amos J. Walker, Inc*., 452 P.2d 916, 916 (Nev. 1969).

As an initial matter, Allstate's claim for declaratory judgment of alter ego is a cognizable freestanding cause of action in this context. *See Trina Solar US, Inc. v. Carson-Selman*, No. 2:20-cv-1308-JCM-BNW, 2020 WL 7338552, at *3 (D. Nev. Dec. 14, 2020) (citing *Magliarditi v. TransFirst Grp., Inc.*, 450 P.3d 911, 1 (Nev. 2019) (unpublished table decision)).  Thus, if Allstate can prove there is no genuine dispute of material fact that (1) Med Ed Labs is influenced and governed by Nassiri; (2) there is a unity of interest and ownership such that Med Ed Labs and Nassiri are inseparable; and (3) adherence to the corporate fiction separating the two would promote fraud, it is entitled to summary judgment. *See Polaris Indus. Corp.*, 747 P.2d at 886.  It fails at the first element, however.  There are genuine issues of material fact as to whether Nassiri or Johnston exercises control over Med Ed Labs.

The undisputed facts show that Johnston's name appears as president on all of the government documentation associated with the business.  *See, e.g.*, (ECF No. 108-17).  Those facts also show that he is the only shareholder.  *See* (ECF No. 108-25).  Of course, those elements are not determinative alone.  *See Loomis*, 8 P.3d at 905.

The evidence also shows that Johnston retained some level of control over the business's decisions, although the deposition testimony raises some conflicting inferences.  On one hand, Nassiri runs the day-to-day operations of the business.  (ECF Nos. 108-1 at 46; 108-3 at 45–46).  By his own admission, he is the one that handles schedules, the majority of communication with clients, the content and execution of the business's labs and seminars, and is the primary contact for the business.  *See* (ECF No. 108-3 at 45–50).  On the other hand, there is evidence that

James C. Mahan
U.S. District Judge

Johnston is the one ultimately reviewing the business's finances, and that he retained some level of control over the business's "major decisions." (ECF Nos. 108-1 at 46–47, 75–76; 108-3 at 46, 61–62). While it is clear from Johnston's testimony that he is, at best, relatively absent from the business and allows Nassiri to handle the day-to-day operations, merely being an absentee owner who lacks knowledge of the business does not, on summary judgment, require a finding that someone else actually controls the business. *See Mallard Auto. Grp., Ltd. v. LeClair Mgmt. Corp.*, 153 F. Supp. 2d 1211, 1214 (D. Nev. 2001).

At the summary judgment stage, the court cannot weigh the credibility of this evidence, and it must draw available inferences in favor of the nonmoving party. *See* 477 U.S. 242 at 255. Here, the inference in the light most favorable to defendants is that Johnston is an absentee owner who, despite his relative unfamiliarity with the particulars of the business, is the final authority. From this deposition testimony, it is possible that a jury could find that Johnston—not Nassiri—exercises ultimate control of Med Ed Labs. *See Mallard Auto. Grp*, 153 F. Supp. 2d at 1214.

Making all inferences in favor of defendants, the evidence shows that Nassiri was simply doing the job he was hired to do—run the day-to-day operations of Med Ed Labs. While there is evidence that Nassiri's involvement in Med Ed Labs may have gone beyond that, there is also evidence that Johnston retained final decision-making authority. It may be that Med Ed Labs is Nassiri's alter ego, but the court cannot make that determination at this procedural stage. Because there is evidence that would allow a reasonable jury to reach either conclusion, Allstate's motion for summary judgment is DENIED as to the alter ego claim.

B. Civil Conspiracy

Allstate also moves for summary judgment as to its civil conspiracy claim. For the same reasons as above, the court DENIES summary judgment on this claim as well.

"Actionable civil conspiracy arises where two or more persons undertake some concerted action with the intent 'to accomplish an unlawful objective for the purpose of harming another,' and damage results." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (2014) (quoting *Consol. Generator–Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (1998)).

James C. Mahan
U.S. District Judge

1    To prevail, "a plaintiff must provide evidence of an explicit or tacit agreement between the

2    alleged conspirators." *Id.*

3           The court found above that it cannot, at this time, determine whether Med Ed Labs is

4    Nassiri's alter ego.   Because that alter ego relationship is the underlying civil wrong the

5    conspiracy claim is rooted in, the court must also deny summary judgment as to this claim.  The

6    court cannot say there is no genuine dispute of material fact as to an alleged agreement to hide

7    assets in a company when it cannot even determine whether the assets were unlawfully hidden in

8    the first place.   While it may be that there was a civil conspiracy to form Med Ed Labs as a

9    vehicle to shield Nassiri's assets from judgment, the court cannot conclude that from the

10   evidence provided at this procedural stage.   Therefore, Allstate's summary judgment motion is

11   DENIED.

12   **IV.      Conclusion**

13           Accordingly,

14           IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Allstate's motion for

15   summary judgment (ECF No. 108) be, and the same hereby is, DENIED.

16           IT IS FURTHER ORDERED that defendants' motion to extend time (ECF No. 109) be,

17   and the same hereby is, DENIED.

18           IT IS FURTHER ORDERED that defendants' supplement to that motion (ECF No. 110)

19   be, and the same hereby is, STRICKEN.

20           IT IS FURTHER ORDERED that defendants' motion for summary judgment (ECF No.

21   112) and the associated response and reply (ECF Nos. 117; 120) be, and the same hereby are,

22   STRICKEN.

23           DATED March 22, 2023.

24

25                                                       UNITED STATES DISTRICT JUDGE

26

27

28