McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
Renee M. Maxfield
Nevada Bar No. 12814
  renee.maxfield@mccormickbarstow.com
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone:    (702) 949-1100
Facsimile:    (702) 949-1101

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY; ALLSTATE INDEMNITY COMPANY; and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,<br><br>            Plaintiffs,<br><br>    v.<br><br>OBTEEN N. NASSIRI, an individual; and MED ED LABS, a Nevada nonprofit corporation,<br><br>            Defendants. | Case No. 2:20-cv-00425-JCM-DJA<br><br>**PLAINTIFFS' MOTION TO LIFT STAY OF CASE AS IT PERTAINS TO PLAINTIFFS' CLAIMS AGAINST DEFENDANT OBTEEN NASSIRI** |

COMES NOW, Plaintiffs ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY (hereinafter collectively referred to as "Allstate" or "Plaintiffs"), by and through their counsel of record of the law firm of McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP, hereby submit their Motion to Lift Stay of Case as it Pertains to Plaintiffs' Claims against Defendant Obteen Nassiri.

This Motion is made and based on the papers and pleadings on file herein, the following Memorandum of Points and Authorities, and such other argument to be presented at the time set for hearing on this matter.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

As the Honorable Court is well aware, this protracted matter involving Allstate and Defendants has been going for sixteen (16) years, since 2008. Allstate won over eight million dollars ($8,000,000.00) in judgments against Defendant Obteen Nassiri (hereinafter "Nassiri") personally, which has not been paid despite the Judgment and Allstate has incontrovertible reasons to believe that Nassiri is concealing his funds within and behind his alter ego Defendant Med Ed Labs (hereinafter "Med Ed Labs") to avoid payment of this Judgment. As Defendants were and are continuing to obfuscate, avoid, and frustrate Allstate's lawful efforts to collect the Judgment that the Court and jury duly awarded Allstate, Allstate had no choice but to file a second Complaint on February 28, 2020. Allstate then filed its Amended Complaint on May 26, 2020.

With the bench trial having been scheduled to finally begin on March 25, 2024, Allstate spent considerable time and resources preparing for its day in court and has consistently adhered to all deadlines. Now, on the eve of trial, Med Ed Labs has declared for bankruptcy claiming Allstate's Judgment of $8,699,298.78 as the primary, if not sole, basis for its bankruptcy petition. *See* Voluntary Petition for Non-Individuals Filing for Bankruptcy, Case No. 24-11210-hlb, attached hereto as ***Exhibit "1."*** In fact, Allstate's Judgment makes up 98.37% of Med Ed Labs purported debt/liabilities. *See id.* Allstate notes, however, that fraud is not dischargeable in bankruptcy, thus, Allstate's Judgment against Nassiri and admission of Judgment against Med Ed Labs will not, and cannot, be discharged. It is clear that Med Ed Labs' bankruptcy petition was filed with the sole intent of delaying the proceedings in this action.

## II.
## PROCEDURAL BACKGROUND AND RELEVANT FACTS

Before being vacated, the instant case was scheduled for a five-day bench trial to commence on March 25, 2024. Allstate brings a declaratory judgment action against Nassiri and Med Ed Labs as Nassiri's alter ego, alleging two (2) causes of action against both Defendants: (1) declaratory judgment – reverse alter ego and (2) civil conspiracy. Now, a mere ten (10) days before the trial was

set to begin, on March 15, 2024, Med Ed Labs filed a notice of bankruptcy. (ECF No. 152). The bankruptcy proceeding is being adjudicated in the United States Bankruptcy Court for the District of Nevada, case number BK-S-24-11210-hlb. *Id.* Accordingly, pursuant to 11 U.S.C. § 362, this Court instituted an immediate and automatic stay on all proceedings against Nassiri and Med Ed Labs. (ECF No. 153).

However, Allstate maintains that a stay of this case against Nassiri is not warranted for several reasons. First, Nassiri himself is not shielded by the alter ego Med Ed Labs' bankruptcy filing so a trial against Nassiri is just and proper at this time. Second, Allstate's claims against Nassiri that are ready for trial are declaratory relief in nature because Allstate is attempting to show that Med Ed Labs is Nassiri's alter ego, meaning that no damages are involved. Third, Allstate is arguing that Nassiri engaged in civil conspiracy to conceal his assets within Med Ed Labs so that he would not have to pay what he owes to Allstate. In other words, any potential damages requested at trial would be against Nassiri only, which would not affect Med Ed Labs while Med Ed Labs bankruptcy action is pending.

Fourth, a trial against Nassiri would not affect the bankruptcy proceeding of Med Ed Labs as Med Ed Labs' bankruptcy filing itself admits that Allstate is a creditor for the amount of the above RICO Judgment. *See* **Exh. 1**. Lastly, and most importantly, Allstate's Judgment and claims against Nassiri pertain to Nassiri's and Med Ed Labs' fraud and conspiracy, which are not protected by the bankruptcy code, and therefore the bankruptcy stay and discharge do not apply anyway.

In sum, for all of the reasons explained below, Allstate respectfully requests that the Honorable Court lift the stay of this case as it pertains to Allstate's claims against Nassiri, regardless of Med Ed Labs' pending bankruptcy proceeding, and thereby permit the bench trial to go forward.

**III.**
**LAW AND ARGUMENT**

**A.**   **The Honorable Court has the Inherent Authority to Lift the Stay.**

The Honorable Court has the inherent power and authority to make all rulings necessary to effectuate justice, including the power to lift a stay previously instituted by the Court. *See Yong v. Immigration & Naturalization Service*, 208 F.3d 1116, 1119 (9th Cir. 2000) (stating that while the

circuit court will "respect the trial court's inherent power to control the disposition of the causes on its docket with economy of time and effort for itself," it cannot "abdicate [its] role ... to prevent the ossification of rights which attends inordinate delay"); *see also United States v. Mancuso*, 130 F.R.D. 128, 130 (D. Nev. 1990) (stating that the court has the inherent authority to manage its docket). The court that imposes a stay logically has the inherent power and discretion to lift the stay. *Acres 4.0 v. IGT*, 2023 WL 9111408, at *4 (D. Nev. Nov. 14, 2023). For instance, a court may lift a stay if the circumstances supporting the stay have changed such that the stay is no longer appropriate. *Id.* (citing *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016)).

In the case at bar, the circumstances involved here are such that a stay of the case for Nassiri is clearly not supported by law, evidence, and facts.

### B. <u>Nassiri has not Filed for Bankruptcy Proceeding, Thus, He is not Shielded by Med Ed Labs' Bankruptcy Filing.</u>

In *In re RS Air, LLC*, 651 B.R. 538 (9th Cir. BAP June 2, 2023), the United States Bankruptcy Appellate Panel of the Ninth Circuit addressed the issue of whether the alter egos of a bankrupt entity are entitled to the protection of bankruptcy and discharge injunctions. In *RS Air*, after Chapter 11 debtor RS Air, LLC received its bankruptcy discharge, creditors sued to collect a discharged debt from RS Air's alleged alter egos. *Id.* at 540. RS Air claimed that this was a violation of the discharge injunction and bankruptcy code. *Id.* Specifically, creditor NetJets named Mr. Stephen Perlman (the founder of RS Air) as the alter ego of RS Air and thereby sought to collect its debt from the alter ego Perlman. *Id.* at 541. The bankruptcy court there admitted that while the bankruptcy proceeding protects the debtor itself from liability, any other person or entity affiliated with the debtor is not protected under the plain meaning of 11 U.S.C. § 524. *Id.* at 543-44.

The Ninth Circuit affirmed this ruling, concluding that nothing in § 524 prohibits NetJets from holding the alter ego Perlman liable for the bankrupt RS Air's debts. *Id.* at 544. Moreover, the Ninth Circuit emphasized that "§ 524(e) explicitly provides that the discharge injunction does not affect the liability of any other entity on the discharged debt. The Ninth Circuit employs an especially strict reading of § 524(e): 'This court has repeatedly held, without exception, that § 524(e)

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 West Sunset Road, Suite 350
Las Vegas, NV 89113

4   Case No. 2:20-cv-00425-JCM-DJA
PLAINTIFFS' MOTION TO LIFT STAY OF CASE

precludes bankruptcy courts from discharging the liabilities of [alter egos].'" *Id.* at 545 (internal citations omitted).

The same kind of outcome was reached by the influential United States District Court for the Eastern District of New York. In *Pavers & Road Builders Dist. Council Welfare Fund v. Core Contracting of N.Y., LLC*, 536 B.R. 48 (E.D.N.Y. 2015), the administrators of ERISA pension fund brought suit to recover unpaid pension contributions from four related corporate defendants. After one of defendants filed for Chapter 11 relief, defendants sought determination that stay applied to prevent cause of action from proceeding. *Id.* at 50. The district court determined that automatic stay protected only the debtor corporation, and allowed cause of action to proceed against other corporate defendants, whereupon defendants sought reconsideration based on alter ego claims asserted by pension administrators. *Id.*

On reconsideration, the *Pavers* court held that automatic stay did not extend to protect alter egos from suit to recover unpaid pension contributions merely because the pension administrators were asserting that debtors and non-debtors were alter egos of each other. *Id.* at 48. The court pointed to the plain language of the statute, which provides that the automatic stay protects only the debtor, not other entities. *Id.* at 51. Just because two entities are alter egos does not make them both debtors under the bankruptcy code. *Id.* The *Pavers* court clarified that it simply means they are liable for each other's debts. *Id.* The court concluded by stating that if the alter ego entity wants that protection, it need only file its own petition. *Id.*

In the case at bar, two facts are clear: Med Ed Labs has declared bankruptcy, but Nassiri has not. As the Court is well aware, Allstate is claiming that Med Ed Labs is the alter ego of Nassiri and that Nassiri conspired to conceal his assets within Med Ed Labs in order to avoid payment of his Court-ordered Judgment. Now that Med Ed Labs has declared bankruptcy, Allstate does not dispute that Med Ed Labs is protected from the instant case at this time while its bankruptcy proceeding plays out. However, Nassiri himself has not declared bankruptcy. As put forth by Allstate throughout the entirety of this litigation, there is no doubt that Nassiri is an alter ego who is inseparable from his company, Med Ed Labs. As a mere affiliate of Med Ed Labs, Nassiri himself is not protected by Med Ed Labs' bankruptcy filing and the automatic stay. In fact, as emphasized by the Ninth Circuit

1  in *RS Air* and the *Pavers* decision above, nothing in the bankruptcy code prohibits a creditor like
2  Allstate from holding Nassiri responsible for his debts while Med Ed Labs is undergoing a
3  bankruptcy proceeding.

4      From the above rulings, it can only be concluded that the bankruptcy code's automatic stay
5  and discharge do not extend to the alleged alter egos of the debtor. Accordingly, pursuant to § 524
6  and the Ninth Circuit case law above, the alter ego Nassiri is not shielded by Med Ed Labs'
7  bankruptcy filing, and therefore the scheduled trial against Nassiri is proper and just at this time.

**C.  Because Allstate is Attempting to Show that Nassiri and Med Ed Labs are Alter Egos of Each Other, Allstate's Claim is Declaratory Relief in Nature**

10      Regarding the nature of declaratory relief, the United States Supreme Court has affirmed
11  that "[t]he Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, permits a federal court to declare
12  the rights of a party whether or not further relief is or could be sought, and we have held that under
13  this Act declaratory relief may be available even though an injunction [or damages] is not." *Green
14  v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 427-28 (1985) (internal citation omitted). In other
15  words, in a declaratory action, a party is attempting to ascertain what its rights and obligations are
16  whether or not any other relief, such as damages, is sought. *See id*.

17      On the other hand, the purpose and spirit of the bankruptcy code's automatic stay provision
18  is well-established. The Third Circuit explained the following about the stay:

> When a debtor files for bankruptcy, Section 362(a) of the Bankruptcy Code imposes a broad automatic stay. That stay prohibits "all entities" from, inter alia, "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or ***to recover a claim against the debtor*** that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1), (6). The automatic stay provides one of the fundamental protections for debtors found in the Bankruptcy Code. *See, e.g., Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

25  *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3rd Cir. 2011) (emphasis added).

26      Put another way, the bankruptcy stay is there to protect and shield the assets and possessions
27  of the debtor and prevent anyone from laying a claim on them while the proceeding is ongoing. The
28  Fourth Circuit put it best when it defined that "[a] chief purpose of the automatic stay is to allow for

a systematic, equitable liquidation proceeding by avoiding a chaotic and uncontrolled **scramble for the debtor's assets** in a variety of uncoordinated proceedings in different courts." *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 864 (4th Cir. 2001) (emphasis added) (internal citation omitted).

In the case at bar, as explained above, one of the claims Allstate seeks to bring against Nassiri is a declaration that Med Ed Labs is the alter ego of Nassiri. In other words, a straightforward declaratory relief. With respect to the first cause of action for declaratory relief, no additional damages are requested against Med Ed Labs or Nassiri. Allstate simply seeks to ascertain and affirm that Nassiri and Med Ed Labs are alter egos who are inseparable from each other. Such a declaratory relief action plainly does nothing to disturb or even touch any potential assets or money of Med Ed Labs at this time with respect to the first cause of action. Accordingly, a stay for Nassiri at this time is unwarranted and unsupported by law or evidence.

**D.    Allstate's should be Permitted to Pursue its Civil Conspiracy Claim Against Nassiri and any Potential Damages against Nassiri**

As described above, Allstate's second claim for relief is for civil conspiracy against Nassiri and Med Ed Labs as Nassiri and Joshua Johnston, the purported owner of Med Ed Labs, engaged in conspiracy to conceal Nassiri's money and assets within Med Ed Labs so that he would not have to pay what he owes to Allstate. The civil conspiracy claim and request for damages related thereto can proceed against Nassiri while the claim against Med Ed Labs is stayed pending its bankruptcy action. Allstate's pursuit of damages against Nassiri at trial would be against Nassiri only for his unlawful engagement in civil conspiracy to hide his assets from Allstate. As explained by the Ninth Circuit above, Nassiri as the alter ego is not covered by the blanket protection granted to Med Ed Labs at this time. Nassiri himself has not filed for bankruptcy proceeding and there is nothing to personally shield him against Allstate's civil conspiracy claim against him. Any potential damages that Nassiri would have to pay would be his own personal responsibility, not the liability of the allegedly bankrupt Med Ed Labs. Because Med Ed Labs would not be affected in any way should Allstate's civil conspiracy claim against Nassiri be permitted to proceed, no bankruptcy code is being violated and therefore a stay for Nassiri would be improper and unwarranted at this time.

### E. Trial against Nassiri would not Affect Med Ed Labs as Med Ed Labs' Bankruptcy Filing itself Admits that Allstate is a Creditor for the Amount of the Judgment

In a similar vein, the trial against Nassiri would not affect the bankruptcy proceeding of Med Ed Labs as Med Ed Labs' bankruptcy filing itself admits that Allstate is a creditor for the amount of the above RICO Judgment. *See Exh. 1*. In fact, Med Ed Labs admits in the filing that it owes creditor Allstate at least $8,699,298.78. As the alter ego who engaged in civil conspiracy to conceal his assets and money within Med Ed Labs, Nassiri is personally liable for this amount of Judgment. While Med Ed Labs is shielded at this time for collection of this amount and all other amounts it is in debt, Nassiri remains personally liable for Allstate's Judgment.

### F. Because Allstate's Judgment against Nassiri Pertains to Nassiri's and Med Ed Labs' Fraud, the Bankruptcy Stay and Discharge Do Not Apply Anyway

Notwithstanding all of the above arguments, Allstate expounds that Med Ed Labs' eleventh-hour filing for bankruptcy is not even applicable here because both Nassiri and his company engaged in civil conspiracy and fraud. Furthermore, the underlying Judgment that serves as the overwhelming majority of Med Ed Labs' basis for seeking bankruptcy protection stems from a Judgment against Nassiri for judicial findings of fraud. *See* Special Verdict Form, attached hereto as *Exhibit "2."* The 11 U.S.C. § 523(a)(2)(A) clearly states that a "discharge . . . of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The Ninth Circuit has explained that "[a]ctual fraud is the type involving moral turpitude, or intentional wrong, and thus there can be no mere imputation of bad faith." *In re Anastas*, 94 F.3d 1280, 1286 (9th Cir. 1996).

Indeed, any time fraud or fraudulent activity is involved in a bankruptcy case, the bankruptcy code and the federal courts look unforgivingly upon the person or entity who tries to take advantage of bankruptcy to escape liability for engaging in such fraud. In *Bartenwerfer v. Buckley*, 598 U.S. 69, 143 S.Ct. 665 (2023), Ms. Kate Bartenwerfer sold her house to Mr. Kieran Buckley but failed to disclose a host of disastrous construction problems with the house because she was personally

not aware of them. *Id.* at 72-73, at 670. When Buckley sued Bartenwerfer and obtained judgment against her, Bartenwerfer was unable to pay and thus filed for bankruptcy. *Id.*

The bankruptcy filing theoretically meant a stay and then the discharge of all debts held by Bartenwerfer. However, the United States Supreme Court, in interpreting § 523(a)(2)(A), declared that "not all debts are dischargeable." *Id.* at 73, at 670. The Supreme Court explained that while it is true that Bartenwerfer did not knowingly engage in fraud in selling the problematic house to Buckley, fraud was still involved because Buckley unwittingly contracted for a fraudulently built and obtained property. While sympathetic to the plight of Bartenwerfer, the Supreme Court nevertheless instructed that "innocent people are sometimes held liable for fraud they did not personally commit, and, if they declare bankruptcy, § 523(a)(2)(A) bars discharge of that debt." *Id.* at 83, at 676. Indeed, the Supreme Court further declared that "Congress has evidently concluded that the creditors' interest in recovering full payment of debts obtained by fraud outweigh[s] the debtors' interest in a complete fresh start." *Id.* (citing *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654 (1991)). Simply put, fraud is fraud at the end of the day.

In the case at bar, Nassiri and Med Ed Labs did not engage in any "innocent" or "no-fault" fraud here. Quite the opposite, the underlying Judgment is for substantial damages relating to fraudulent activity of Nassiri, of which Med Ed Labs admits liability for. If the United States Supreme Court, in interpreting § 523(a)(2)(A), will not give any leeway to individuals who have been caught up in fraudulent activities through no fault of their own, it goes without saying someone like Nassiri and Med Ed Labs, who knowingly and purposefully engaged in fraud, definitively cannot use bankruptcy to escape their responsibility and liability. Simply put, Allstate maintains that because of Nassiri's and Med Ed Lab's indisputable fraudulent activities, they cannot avail themselves of bankruptcy protections and therefore they must proceed to trial as originally scheduled. At the very least, Nassiri himself must proceed to trial pursuant to § 523(a)(2)(A) and the *Bartenwerfer* court's interpretation thereof.

In sum, for all of the reasons explained above, Allstate again requests that the Honorable Court lift the stay of this case as it pertains to Plaintiffs' claims against Defendant Obteen Nassiri and thereby permit the trial to go forward.

# IV.
# CONCLUSION

Allstate maintains that Nassiri is not protected by Med Ed Labs' bankruptcy filing so a trial against Nassiri is just and proper at this time. Allstate's claims against Nassiri that are ready for trial are declaratory relief in nature because Allstate is attempting to show that Med Ed Labs is Nassiri's alter ego (no damages are involved). Next, Allstate is arguing that Nassiri engaged in civil conspiracy to conceal his assets within Med Ed Labs so that he would not have to pay what he owes to Allstate. In other words, any potential damages would be against Nassiri only, which would not affect Med Ed Labs at this time. Also, the trial against Nassiri would not affect the bankruptcy proceeding of Med Ed Labs as Med Ed Labs' bankruptcy filing itself admits that Allstate is a creditor for the amount of the above RICO Judgment. Most importantly, Allstate's judgment and claims against Nassiri pertain to Nassiri's and Med Ed Labs' fraud and conspiracy, and therefore the bankruptcy stay and discharge are not applicable anyway.

Based on the foregoing, Plaintiffs ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, and ALLSTATE FIRE & CASUALTY INSURANCE COMPANY respectfully request that the Honorable Court grant their Motion to Lift Stay of Case as it Pertains to Plaintiffs' Claims Against Defendant Obteen Nassiri, and thereby permit the bench trial to proceed.

DATED this 26th day of March, 2024

        McCORMICK, BARSTOW, SHEPPARD,
        WAYTE & CARRUTH LLP


        By   */s/ Renee M. Maxfield*
             Renee M. Maxfield
             Nevada Bar No. 12814
             8337 West Sunset Road, Suite 350
             Las Vegas, Nevada 89113
             Tel. (702) 949-1100
             *Attorneys for Plaintiffs*

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 WEST SUNSET ROAD, SUITE 350
LAS VEGAS, NV 89113

10   Case No. 2:20-cv-00425-JCM-DJA
PLAINTIFFS' MOTION TO LIFT STAY OF CASE

# CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2024, a true and correct copy of **PLAINTIFFS' MOTION TO LIFT STAY OF CASE AS IT PERTAINS TO PLAINTIFFS' CLAIMS AGAINST DEFENDANT OBTEEN NASSIRI** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

R. Duane Frizell, Esq.
FRIZELL LAW FIRM
400 N. Stephanie Street, Suite 265
Henderson, Nevada 89014
*Attorney for Defendants*

By  */s/ Christi Colucci*
    Christi Colucci, an Employee of
    McCORMICK, BARSTOW, SHEPPARD,
    WAYTE & CARRUTH LLP